UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HORTON,

        *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
_____/

CASE NO. 2:18-cv-10623
DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (R. 13, 14)

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support Defendant Commissioner of Social Security's determination that Plaintiff James Horton is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 13), be **GRANTED**, the Commissioner's Motion, (Doc. 14), be **DENIED**, and that the case be **REMANDED** to the Commissioner under "sentence four" of 42 U.S.C. § 405(g).

### II.    REPORT

    **A.**    **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance

1

Benefits (DIB) and Title XVI Supplemental Security Income Benefits ("SSI"). (R. 3.) The case is presently before the Court upon the parties' cross-motions for summary judgment. (Doc. 13, 14.)

Plaintiff applied for DIB and SSI benefits on February 10, 2015, alleging that his disability had begun on December 10, 2014. (R. 9, at PageID.180, 187.) The Commissioner denied the claim. (R. 9, at PageID.82, 83.) Plaintiff then requested a hearing before an ALJ, which occurred on August 11, 2016. (R. 9, at PageID.53-80.) The ALJ issued a decision on December 16, 2016, finding Plaintiff not disabled during the relevant period. (R. 9, at PageID.39-49.) On December 19, 2017, the Appeals Council denied review, (R. 9, at PageID.27-30), and Plaintiff filed for judicial review of the final decision on February 22, 2018. (R. 1). He then filed the instant Motion for Summary Judgment, after seeking twice to extend the time, on July 27, 2018, (R. 13), and the Commissioner countered with its own Motion on August 24, 2018 (R. 14), and Plaintiff replied on September 10, 2018. (R. 15.)

**B.   Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that

> you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform

given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (R. 9, at PageID.39-49.) At step one, the ALJ found that Plaintiff's last date of insured status was December 31, 2019, and that he had not engaged in substantial gainful activity since his alleged onset date of December 10, 2014. (R. 9, at PageID.41.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, gastroparesis, mild levoconvex scoliosis lumbar spine, and right knee patellafemoral arthropathy. (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (R. 9, at PageID.42-43.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. 404.1567(b) except occasionally climb ramps and stairs, occasionally balance, crawl, kneel, stoop, crouch; with no climbing ladders, ropes, scaffolding, and no exposure to unprotected heights, or hazardous machinery.

(R. 9, at PageID.44.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a residual program caseworker and security guard. (R. 9, at PageID.48-49.) Because this finding resolved the case, the ALJ did not proceed to step five.

### E.     Administrative Record

#### 1.     Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing his

medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 2. Application Reports and Administrative Hearing

#### i. Plaintiff's Reports

Plaintiff completed a function report on March 4, 2015, wherein he stated that his "condition is gastroparesis, it is an incurable condition that developed from me being a diabetic. When my condition presents it results in uncontrollable vomiting and nausea. I have to seek emergency treatment as a result and often in-patient hospital stays, resulting in significant lost time from work frequently over the last 5 year[s]." (R.9 at PageID.223.) Plaintiff indicated that he had no problems with self-care, but that when he is symptomatic he is completely unable to sleep. (R.9 at PageID.224-225.) Plaintiff is able to drive, shop in stores, and can handle his own finances. (R.9 at PageID.226.) Plaintiff did not have any difficulties with authority, following directions, or stress. (R.9 at PageID.229-230.) However, Plaintiff also described that "when my condition is not active, my life is completely normal. When it becomes active, I am completely debilitated until it subsides. I am unable to nourish myself, nor am I able to pursue normal activities due to frequent vomiting episodes." (R.9 at PageID.230.)

#### ii. Plaintiff's Testimony at the Administrative Hearing

At the hearing held on August 11, 2016, Plaintiff testified that was born in 1968, is single, and that he lost 60 pounds because of his condition. (R. 9 at PageID.58.) He also stated that he is receiving 60% disability benefits from the Veteran's Administration (VA). (R. 9 at PageID.58-59.) He is able to drive himself and he has an Associate's degree in

criminal justice. (R.9 at PageID.59-60.) Plaintiff last worked at Quicken Loans but that his "episodes with my gastroparesis that caused me to lose time during the training process and the first couple weeks on the floor [caused him to] f[a]ll too far behind and [he] could not catch up" so he was not retained in that job. (R.9 at PageID.60.) Prior to that, he worked as a juvenile caseworker for Key Program, Inc, and as a security officer at Detroit Public Schools. (R.9 at Page ID.61-62.) He also worked at Detroit Receiving Hospital as a security guard and while working there, during 2009, his gastroparesis episodes began affecting his abilities. (R.9 at PageID.62.)

When asked what keeps him from working, Plaintiff testified "[p]rimarily my gastroparesis. Through the course of a month, I get sick with it maybe 4-5 times. Other months, I may have the same amount, but I may get a little sicker and it will last over the, normally one or two days episode may last. If it lasts beyond that, then I have to go to the hospital." (R.9 at PageID.64-65.) Plaintiff was hospitalized overnight "maybe 10" times in 2016 "because I was so severely dehydrated" that he was given fluids and medications intravenously. (R.9 at PageID.65.) The gastroparesis is not curable, only manageable, and although he has tried various medications, they are not effective. (*Id*.) During an episode, Plaintiff throws up "multiple times" "[t]o a point where the lining of my stomach get[s] damaged at times" and "where I can present blood sometimes in my vomit and bile I'm throwing up." (R.9 at PageID.67.) Plaintiff believed the condition was related to his diabetes and noted that "since I start[ed] having problems with gastroparesis, my energy levels are almost at zero… I'm constantly tired." (R. 9 at PageID.68.) Plaintiff explained that he would "have to actually sit down during the process of preparing my food

sometimes because I just feel so tired." (R. 9 at PageID.69.) In addition, Plaintiff described difficulties with neuropathy, including opening jars, buttoning shirts, typing, dropping items, hat and cold sensitivity, and he described difficulties resulting from diabetes, including worsening vision and migraines. (R.9 at PageID.69-71.) Plaintiff further explained that migraines were part of his disability determination from the VA and the remainder was based on his lower back issues and sciatica. (R.9 at PageID.71.)

### iii.    The VE's Testimony at the Administrative Hearing

The VE then testified that Plaintiff's past jobs of residential case program case worker was classified at SVP-7, light; that security guard was classified at SVP-3, light. (R.9 at PageID.75.) For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and background who "is limited to light exertional work which means they can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl. Cannot climb ladders, ropes, and scaffolds or be exposed to hazardous machinery and unprotected heights." (R.9 at PageID.75.) The VE indicated that such a person could perform Plaintiff's past relevant work. (R.9 at PageID.75-76.) If such a person were, because of their symptoms, off task for 16 to 20 percent of the time, the VE responded that work would be precluded because "[a]nything over 15 percent is work preclusive[.]" (R.9 at PageID.77.) When asked about a person were to have at least two absences per month because of their symptoms, the VE responded that "an individual can't miss more than one day per month without it becoming work preclusive and no work within the first 90 days of hire." (*Id.*)

**F.     Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the

---

[1] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir, 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *rep. & rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *rep. & rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). Therefore, the ALJ does not owe a

treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL

the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply

---

2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

12

because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

    (i)    [D]aily activities;
    (ii)   The location, duration, frequency, and intensity of . . . pain;
    (iii)  Precipitating and aggravating factors;
    (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
    (v)   Treatment, other than medication, . . . received for relief of . . . pain;
    (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G. Arguments and Analysis

Plaintiff argues that the ALJ's RFC analysis ignores the fact that Plaintiff would miss work and/or be off task whether or not he actually went to the emergency room. (R.13, 15.) The Commissioner responds that the ALJ properly considered the discrepancies between the number of visits the record showed Plaintiff visited the emergency room and the number Plaintiff posed in evaluating Plaintiff's credibility and that substantial evidence supports the decision. (R.14.)

The ALJ discussed the fact that Plaintiff has symptoms of gastroparesis four or five times per month, that each episode lasts one or two days, and that if an episode lasts beyond that time, he becomes dehydrated and has to go to the hospital. (R.9 at PageID.45.) The ALJ also noted that during an episode, Plaintiff feels bloated, and if it worsens, he will

13

vomit multiple times and cannot keep any food down. The ALJ did not appear to question Plaintiff's description of his symptoms.

The ALJ also discussed that Plaintiff reported he has been hospitalized "maybe 10 times" since December 2014. (R.9 at PageID.45.) When analyzing the effects gastroparesis has on Plaintiff's ability to work, the ALJ noted that prior to 2014, Plaintiff reported 50 hospital visits and reported only 10 after 2014, somehow concluding that his condition was improving. (R,9 at PageID.46.) In addition, the ALJ found that the records showed Plaintiff had two emergency room visits in July and August of 2014, two in June 2016, and one in July 2016. (*Id*.) The ALJ questioned whether the number of emergency room visits reported by Plaintiff to his doctors or at the hearing were accurate.

Although the ALJ questioned the number of hospital visits Plaintiff's condition required, the ALJ did not find Plaintiff's general descriptions of his symptoms unbelievable; yet, the ALJ failed to account for his discounting those symptoms.

Plaintiff testified that his symptoms of nausea and vomiting occur four to five times per month, lasting for one to two days. (R.9 at PageID.64-65.) If he "get[s] a little sicker" and the symptoms last longer, then he may "have to go to the hospital." (R.9 at PageID.64-65.) Plaintiff also testified that although he has tried various medications, they are not effective. (*Id*.) During an episode, Plaintiff throws up "multiple times" "[t]o a point where the lining of my stomach get[s] damaged at times" and "where I can present blood sometimes in my vomit and bile I'm throwing up." (R.9 at PageID.67.) Plaintiff also reported that "since I start[ed] having problems with gastroparesis, my energy levels are almost at zero… I'm constantly tired." (R. 9 at PageID.68.) Plaintiff explained that he

14

would "have to actually sit down during the process of preparing my food sometimes because I just feel so tired." (R. 9 at PageID.69.) In his function report, Plaintiff readily admitted that "when my condition is not active, my life is completely normal." However, "[w]hen it becomes active, I am completely debilitated until it subsides. I am unable to nourish myself, nor am I able to pursue normal activities due to frequent vomiting episodes." (R.9 at PageID.230.)

Despite the fact that the ALJ concluded gastroparesis was a severe impairment and did not discount Plaintiff's symptoms (beyond the number of emergency room visits), the RFC crafted by the ALJ makes no mention of the effect these symptoms would have on Plaintiff's ability to work. The RFC merely limits the field to jobs in the light work category. This was insufficient. *Gadson v. Berryhill*, No. 1:17-cv-02845-MBS-SVH, 2018 WL 6706000, at *4 (D. S.C. Nov. 28, 2018) (remanding under sentence four because limitation to light work did not sufficiently account for inconsistency in finding condition severe but omitting presence of symptoms due to cyclical vomiting syndrome).

This error cannot be harmless where, as here, the VE testified that if a person were off task more than 15 percent of the time or absent more than 1 day per month, such symptoms would be work preclusive. (R.9 at PageID.77.) Plaintiff's testimony indicated that he would be absent four to five times per month for one to two days. (R.9 at PageID.64-65.)

I suggest that remand is required to allow the ALJ an opportunity to explain these inconsistencies or reevaluate Plaintiff's claims.

15

### H. Conclusion

For these reasons, I conclude that substantial evidence does not support the ALJ's decision. Consequently, I recommend **GRANTING** Plaintiff's Motion, (Doc. 13), **DENYING** the Commissioner's Motion, (Doc. 14), and **REMANDING** the case to the Commissioner under "sentence four" of 42 U.S.C. § 405(g).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file

a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 11, 2019                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: January 11, 2019                     By s/Kristen Castaneda
                                           Case Manager